WILLIAM KOOPMAN, Respondent, v. MEDFORD H.
CAHOON, Appellant.

**St. Louis Court of Appeals, January 5, 1892.**

1. **Accountability of Fiduciary Agent.** Where money is placed
in the hands of a fiduciary to be used for a certain purpose, and
this purpose fails and the money is not so used, it is the duty of the
fiduciary to restore it to the person from whom he has thus
obtained it, and an action for its recovery can be maintained
against him by such person.

2. ———: PLEADING. Such recovery can be had though the plain-
tiff, besides alleging the facts authorizing it, also pleads that the
money was obtained from him for such purpose through fraudu-
lent misrepresentations by such fiduciary, and fails to sustain such
allegation of fraud; the latter allegation may in such case be
rejected as surplusage.

*Appeal from the St. Louis City Circuit Court.*—HON.
JACOB KLEIN, Judge.

AFFIRMED.

*E. P. Johnson,* for appellant.

*Lubke & Muench,* for respondent.

THOMPSON, J.—As a question is raised as to the
nature of this action, it is necessary to state the plead-
ings.

The petition is as follows: "Plaintiff states that
this defendant is an attorney at law, admitted to prac-
tice in this court and other courts in the state of Mis-
souri; that heretofore, to-wit, in the month of April,
1890, the defendant being then, or claiming to the
plaintiff that he was, the attorney of Henry Koopman,
a brother of plaintiff, in the matter of seeking to
obtain, by legal proceedings or otherwise, the title to a

certain tract of land in the city of St. Louis aforesaid, which title was then held by one Anthony Doessegel, did represent and state to plaintiff that he, defendant, had secured a written contract from said Doessegel, agreeing to sell the said tract of land to and for the use and benefit of plaintiff's said brother ; and that if he, plaintiff, would advance to the defendant the sum of $200 defendant would use such sum of money in paying the same to said Doessegel as earnest money upon such contract ; and that thereupon title to said land would be vested in this plaintiff for the use of his said brother, who was then the client of defendant ; that, relying upon and believing such representations of defendant, and desiring and intending to aid said brother in acquiring title to said land, plaintiff did, on or about the fifteenth day of April, 1890, pay over to defendant the said sum of $200 as aforesaid ; that said representations, so made by defendant, were untrue; that defendant had not then, nor has he ever since procured any contract with said Doessegel, and did not pay said sum in discharge of earnest money on purchase of said property, and did not and cannot procure the conveyance or purchase of said Doessegel's title to said property, or of his interest therein ; that plaintiff had frequently demanded from defendant repayment of said sum of money, but that defendant has hitherto wholly failed to repay the same, or any part thereof.   Wherefore plaintiff prays judgment against the defendant for said sum of $200 with interest and costs."

The answer is as follows :   " Defendant for answer to the petition of plaintiff herein admits that he is an attorney at law, admitted to practice in this and other courts in the state of Missouri; admits that, in the month of April, 1890, he was the attorney of Henry Koopman, a brother of plaintiff ( and of plaintiff also ), in the matter of seeking to obtain by legal proceedings and otherwise the title to a certain tract of land in the city of St. Louis aforesaid, which title was then held by

one Anthony Doessegel, and that he represented and stated to plaintiff that he had secured a written contract from said Doessegel to and for the use and benefit of plaintiff's brother (and he had done so); denies that defendant proposed to plaintiff or requested or solicited him in any manner to advance to defendant the sum of $200 or any other sum, or that defendant represented to plaintiff, or any other person, that defendant would use such sum of money in paying the same to said Doessegel as earnest money upon such contract, or that thereupon title to said land would be vested in plaintiff for the use of his said brother; denies that plaintiff relied upon or believed any such representations of defendant, as plaintiff well knew that none such were made by defendant; and defendant further denies that any representations made by defendant were untrue, or that plaintiff advanced to him said sum. Defendant further says that defendant did obtain said contract with said Doessegel, and did pay said sum of $200 in discharge of earnest money on purchase of said property, and that he received said sum from plaintiff's said brother, to whom plaintiff loaned the same for that purpose, and did procure a valid contract in writing from said Doessegel for the conveyance and purchase of said Doessegel's title to said property and of his interest therein, and could have procured the conveyance of said Doessegel's interest therein, all of which facts the plaintiff herein well knew at the time of the institution of this suit by him."

The answer further sets up a counterclaim for services rendered the plaintiff in the same matter for $250, by reason of having obtained the contract referred to, and that plaintiff and his brother refused to carry it out and caused it to be canceled and asks judgment for said sum. The jury found against defendant on this counterclaim, and he does not assign any errors upon that branch of the case. The jury also found for the plaintiff on the cause of action sued on by him, and to reverse

the judgment rendered on that part of the verdict, the defendant prosecutes this appeal.

The evidence adduced at the trial failed to make out the allegations of fraud contained in the petition by which the agency of the defendant for the plaintiff is therein alleged to have been brought about, and by reason of which the plaintiff was induced, as therein alleged, to place the $200 in the hands of the defendant, to be used as earnest money in the purchase of the land from Doessegel. But it did substantiate the following state of facts: That the defendant did undertake for the plaintiff's brother to procure title to the land from Doessegel; that the plaintiff, desiring to aid his brother in the premises, did advance the sum of $200 to be paid by the defendant as earnest money to Doessegel; that, to conceal from Doessegel the fact that the purchase was to be made by the plaintiff's brother (against whom Doessegel was prejudiced), the money was placed in the hands of one Ehlert, who was in the same office with the defendant, by a check drawn by the plaintiff in Ehlert's favor; that, in pursuance of the arrangement, Ehlert turned the money over to the defendant to be by him paid by way of earnest money to Doessegel; that it never has been so paid by him to Doessegel; and that Doessegel refuses to make a sale of the land to the plaintiff's brother. We gather these facts from the defendant's statement, and understand that concerning them there is no dispute.

There are disputes, however, as to several immaterial questions, one of which is whether the defendant ever procured from Doessegel any contract for the sale of the land at all. On this point the defendant gave evidence tending to show that Ehlert had procured Doessegel to sign a contract to sell the land, in a saloon, when he was under the influence of liquor. We do not regard this question as having any influence on the case, since any right of the defendant to retain the

money, or any part of it, as his compensation for procuring the contract is put wholly out of view by the finding of the jury on his counterclaim.   Taking out of the case that counterclaim, and taking out of it also the question of fraud, the question seems to stand this way on the admissions of the pleadings and on a state of undisputed evidence.   The defendant undertook to procure the purchase of certain land of Doessegel for the plaintiff's brother; the plaintiff, to aid his brother, advanced $200, which he placed in the defendant's hands to be by him paid to Doessegel as earnest money. Such arrangements took place that the arrangement could not be carried out (and it does not seem to be at all material through whose fault it could not be carried out), so that the money was never paid over to Doessegel as earnest money to secure the purchase, but remains in the hands of the defendant; and that the defendant refuses to pay it back to the plaintiff.   This seems to be the naked case of money having been placed in the hands of a trustee or fiduciary to be used for a certain purpose, and the purpose has failed—the money cannot be so used—and, yet, the trustee refuses to hand it back to the person who placed it in his hands. The money never belonged to the defendant at all.   It was a trust fund placed in his hands for a particular purpose, and that purpose having failed, it is his duty to restore it to the real owner.

To meet this state of case the defendant takes the position, that the plaintiff is not the real owner of the fund, but that the plaintiff's brother is such owner.   It will be recalled that the defendant admits in his answer, as above quoted, that he received this sum, but denies that he received it from the plaintiff, but avers that he received it from the plaintiff's brother, and then alleges (what he failed to prove) that he paid it over in discharge of earnest money under a contract for the purchase of the land which he procured.  And his argument now is (and he offered an instruction on this

theory, which the court refused ), that the plaintiff loaned this $200 to his brother, and that any right of action to recover it back is in the plaintiff's brother, and not in the plaintiff. That the plaintiff did, in one sense, advance this money to his brother, is substantially admitted by him. He did it to aid his brother in becoming the purchaser of the property ; and it cannot be disputed upon the pleadings and evidence that the plaintiff and the defendant were in privity of contract in respect of the whole arrangement, and that the defendant held the money as the bailee of the plaintiff, and not as the bailee of the brother. The transaction did not take the form of a loan by the plaintiff directly to his brother ; the money never was in the hands of the plaintiff's brother, but it was advanced by a check directly to Ehlert, the go-between through whom the title was to be procured and passed to the plaintiff. There is no doubt that this recovery will bar any possible action which the plaintiff's brother may on any theory have against the defendant to recover this money ; and that is enough for his protection, as he has no right to retain it as against the real owner.

Another argument is that the court should have given an instruction, that the plaintiff could not recover because the action is in tort for a deceit, and there is no evidence tending to show the fraudulent representations alleged in the petition. It may be conceded, at least for the purpose of disposing of the question, that there is no such evidence. But it nevertheless does not seem to be a case within the rule, that a plaintiff cannot sue in tort and recover in contract. All the allegations of fraud and deceit may be rejected from the petition, and yet enough remains to make it a good petition *after verdict*, in an action for money had and received. The action for money had and received, though in *theory of the common law* an action of *assumpsit* and hence an action *ex contractu*, is a common-law action grounded on equitable principles,

and lies in any case where the defendant has money belonging to the plaintiff which he ought not in good conscience to withhold from him. *Davis v. Krum*, 12 Mo. App. 286. Under the reformed procedure, the plaintiff is never to be deprived of his verdict and judgment merely because he has alleged *too much*. The surplusage may be rejected, and if his petition is still good under the doctrine of *aider by verdict*, he may keep his judgment, no other error appearing. *Radcliffe v. Railroad*, 90 Mo. 127; *Floyd v. Gilkey*, 29 Mo. App. 211. See also *Crocker v. Mann*, 3 Mo. 472. It does not lie in the mouth of a bailee, who clearly is endeavoring to hold the money of his bailor without right, to say: "You shall not keep a verdict and judgment by which you have recovered it of me, because you alleged that the bailment was created by my fraud and failed to prove that allegation."

This case is so clear upon the facts admitted by the pleadings and established by uncontroverted evidence, that no other judgment could be rendered which would properly apply the law to the facts. It is emphatically a judgment for the right party, and, as such, must be affirmed. It is so ordered. All the judges concur.